BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com

BARNOW AND ASSOCIATES, P.C.
BEN BARNOW
ERICH P. SCHORK
JEFFREY D. BLAKE
ANTHONY L. PARKHILL
One N. LaSalle Street, Ste. 4600
Chicago, IL 60602
Tel: 312/621-2000
312/641-5504 (fax)
b.barnow@barnowlaw.com
e.schork@barnowlaw.com
j.blake@barnowlaw.com
aparkhill@barnowlaw.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRADLEY WEST, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INTEL CORPORATION, a Delaware corporation,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**CLASS ACTION**<br><br>District Judge<br>Courtroom<br>Magistrate Judge<br>Courtroom<br><br>**JURY TRIAL DEMANDED** |

Bradley West ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge of facts pertaining to him and on information and belief as to all other matters, by and through undersigned counsel, brings this class action complaint against Intel Corporation. ("Intel").

## NATURE OF THE CASE

1. Intel x86-64 microprocessors, which serve as the computational backbone for the majority of personal computers sold in the United States, contain a defect that prevents them from functioning as intended and results in diminished performance.

2. The defect, dubbed "Meltdown" by the security researchers who discovered it, creates a serious risk of exposing sensitive low-level system data. As a result, software workarounds have been implemented in Windows, Linux, and Mac OS operating systems to protect systems from the security defect. The workarounds negatively impact the performance of personal computers containing the microprocessors and prevent the microprocessors from functioning as represented and intended.

3. Plaintiff brings this class action on behalf of consumers who purchased Intel microprocessors impacted by the Meltdown defect or computers containing Intel microprocessors impacted by the Meltdown defect and alleges that Intel's sale of defective microprocessors constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, the California Consumers Legal Remedies Act, and California Unfair Competition Law.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction under 28 U.S.C. §1332(d) because the proposed Class consists of more than 100 members, the amount in controversy exceeds $5 million, exclusive of interest and costs, and Plaintiff and Defendant are diverse parties. The Court also has personal jurisdiction over Defendant because Defendant is headquartered in the State of California.

5. Venue is proper in this judicial district because, at all relevant times, Defendant conducted substantial business in the Northern District of California. A substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

6. Intradistrict Assignment: Pursuant to Civil Local Rules 3-2(c)-(d), and 3-5(b), Defendant is headquartered in Santa Clara County, this action otherwise arises in Santa Clara County, and it is therefore appropriate to assign this action to the Santa Clara Division.

## PARTIES

7. Plaintiff Bradley West is an Illinois citizen and resides in DuPage County, Illinois. In October of 2017, Plaintiff spent over $1,000 to purchase a laptop computer containing a 7th generation Intel Core i7 microprocessor now known to be impacted by the Meltdown defect. As a result of the Meltdown defect, Plaintiff's computer will not function as intended or attain the level of performance that motivated his decision to purchase a computer equipped with a 7th generation Intel Core i7 microprocessor.

8. Defendant Intel Corporation is a Delaware corporation headquartered in Santa Clara, California. Intel is the world's second largest manufacturer of semiconductor chips and the inventor of the x86 microprocessors that power most personal computers, including the Intel x86-64 microprocessors impacted by the Meltdown defect.

## FACTUAL BACKGROUND

9. A security defect dubbed "Meltdown" impacting Intel x86-64 microprocessors was reported on January 2, 2018. The defect was independently discovered by third-party security researchers Jann Horn of Google Project Zero; Werner Haas and Thomas Prescher of Cyberus Technology; and Daniel Gruss, Moritz Lipp, Stefan Mangard, and Michael Schwarz of Graz University of Technology.

10. The defect was disclosed to Intel in June of 2017, if it was not previously known to Intel. The defect impacts x86-64 Intel microprocessors produced since 2011, and likely also impacts older Intel microprocessors. Intel continued to sell defective microprocessors after it was informed of the defect, and even launched a new line of defective microprocessors.

11. The Meltdown defect exposes systems with Intel x86-64 microprocessors to the possibility that normal programs can read the contents of the private kernel memory, making it possible for malicious programs to harvest user data including passwords and other sensitive information.

12. Software workarounds have been added to various operating systems that support x86-64, including Windows 10, Mac OS X, Linux, and others, in order to patch the security defect.

13. As a direct result of these workarounds, which require fundamental changes involving moving the operating system kernel into a separate virtual memory space, system performance is negatively impacted. While performance tests of the patches are ongoing, testing reflects severe performance degradation—approximately 20%—in tests of a computer system's ability to rapidly read small files. All owners of systems powered by x86-64 microprocessors, including Plaintiff and the classes, will be negatively impacted by the defect and the concomitant loss of performance.

14. Performance is the essential attribute of a microprocessor. Computer manufacturers prominently advertise the speed and type of microprocessor included in their computers. Most computers, including Plaintiff's, are affixed with a sticker prominently indicating the make and model of microprocessor contained within.

15. Intel's own marketing literature describing the microprocessor contained in Plaintiff's laptop computer makes the central importance of microprocessor performance clear:

///

///



16. Plaintiff and the classes have been harmed by the performance degradation resulting from the Meltdown defect in Intel's microprocessors. The microprocessors are defective and cannot perform as intended.

## CLASS ACTION ALLEGATIONS

17. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action against Intel as a national class action, on behalf of himself and members of a National Class defined as follows:

> All persons in the United States who purchased a microprocessor with the Meltdown defect or who purchased a computer containing a microprocessor with the Meltdown defect.

Excluded from the class are Defendant, its parents, affiliates, subsidiaries, and entities in which Defendant has a controlling interest, as well as Defendant's officers, directors, legal representatives, heirs, predecessors, successors, and assigns, and the judicial officers presiding over the case.

18. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff also brings this action against Intel as a class action on behalf of himself and members of a Sub-Class defined as follows:

> All residents of Illinois who purchased a microprocessor with the Meltdown defect or who purchased a computer containing a microprocessor with the Meltdown defect.

Excluded from the class are Defendant, its parents, affiliates, subsidiaries, and entities in which Defendant has a controlling interest, as well as Defendant's officers, directors, legal representatives, heirs, predecessors, successors, and assigns, and the judicial officers presiding over the case.

19. The proposed Nationwide Class and Illinois Sub-Class consist of thousands and possibly millions of geographically dispersed members, the joinder of which is impracticable. The precise number and identities of class members are currently unknown to Plaintiff, but can be derived from records maintained by Intel.

20. Intel violated the rights of each class member in the same way by selling the defective microprocessors.

21. There are questions of law and fact common to each of the proposed classes as a whole that predominate over any questions affecting individual class members, including, *inter alia*:

    a. whether Intel's x86-64 microprocessors are defective;

    b. the extent of the damages and harm suffered by Plaintiff and the other class members;

    c. whether the defect caused Plaintiff and the other class members to suffer damages; and

    d. whether Plaintiff and the other class members are entitled to recover actual damages, consequential damages, incidental damages, statutory damages, punitive damages, pre- and post-judgment interest, attorneys' fees, litigation expenses, and court costs and, if so, the amount of the recovery.

22. Plaintiff's claims are typical of class members' claims because they all purchased defective Intel microprocessors or computers containing defective Intel microprocessors.

23. Plaintiff and his counsel will fairly and adequately represent the interests of class members. Plaintiff has no interests antagonistic to, or in conflict with, those of any absent class member. Plaintiff's counsel are experienced in leading and prosecuting class actions on behalf of consumers.

24. A class action is superior to all other available methods for fairly and efficiently adjudicating Plaintiff's and the other class members' claims. Plaintiff and the other class members have been (and will continue to be) harmed as a direct and proximate result of the defect. Litigating this case as a class action is appropriate because (i) it will avoid a multiplicity of suits and the corresponding burden on the courts and parties, (ii) it would be virtually impossible for all class members to intervene in this action, (iii) it will allow numerous entities with claims too small to adjudicate on an individual basis because of

prohibitive litigation costs to obtain redress for their injuries, and (iv) it will provide court oversight of the claims process once Intel's liability is adjudicated.

25. Certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above-described common questions of law or fact predominate over any questions affecting individual class members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

26. The consequences of the defect are applicable to the classes as a whole, for which Plaintiff seeks, *inter alia*, damages, injunctive relief, and other equitable remedies.

27. Absent a class action, Intel will retain the benefits of its wrongdoing despite inflicting substantial damages and other actual injury and harm on Plaintiff and the other class members.

## CAUSES OF ACTION

### COUNT I (NATIONAL CLASS)

### Violation of California Consumers Legal Remedies Act – Civil Code §§1750, *et seq.*

28. Plaintiff repeats and realleges all other paragraphs as if fully set forth herein.

29. Intel is a "person," under Cal. Civ. Code §1761(c).

30. Plaintiff and Class members are "consumers," as defined by Cal. Civ. Code §1761(d), who purchased Intel microprocessors impacted by the Meltdown defect or computers containing Intel microprocessors impacted by the Meltdown defect.

31. Intel's conduct, as described herein, in misrepresenting the performance of its microprocessors, and omitting to disclose that it failed to use adequate and reasonable security measures and manufactured the microprocessors with a uniform defect, violates the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §**§**1750, *et seq*. Specifically, Defendant violated the CLRA by misrepresenting and omitting material facts, and by engaging in the following practices proscribed by Civil Code §1770(a) in transactions that were intended to result in, and did result in, the sale or lease of goods or services:

     a.    representing that goods have approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

     b.    representing that goods are of a particular standard, quality, or grade if they are of another;

     c.    advertising goods with intent not to sell them as advertised; and

     d.    representing that goods have been supplied in accordance with previous representations when they have not.

32. Intel engaged in unfair methods of competition and unfair or deceptive acts or practices by representing that its microprocessors were high performance and state-of-the-art. Contrary to those representations, Intel failed to use adequate and reasonable security measures and manufactured the microprocessors with a uniform defect.

33. Intel engaged in unfair methods of competition and unfair or deceptive acts or practices by selling microprocessors it knew contained the defect. Intel omitted from Plaintiff and the other class members the important fact that the microprocessors contained a defect that created a security vulnerability and caused degraded performance with the intent that Plaintiff and class members rely on such omission.

34. Intel owed a duty to disclose the defect because it possessed exclusive knowledge of the defect, intentionally concealed the existence of the defect, and Intel failed to disclose the material information prior to selling the microprocessors to Plaintiff and the other class members.

35. Pursuant to California Civil Code §1782(d), Plaintiff, individually and on behalf of the other members of the class, seek a court order enjoining the above-described wrongful acts and practices of Intel and ordering Intel to extend repair and replacement remedies to all class members.

36. Pursuant to §1782 of the CLRA, Plaintiff notified Intel in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that Intel rectify the problems associated with the actions detailed above and give notice to all affected consumers of Intel's intent to so act. A copy of the letter is attached hereto as Exhibit A.

37. If Intel fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of

written notice pursuant to §1782 of the CLRA, Plaintiff will amend this complaint to add claims for actual, punitive and statutory damages, as appropriate.

38. Plaintiff and the other class members purchased Intel microprocessors for end use and not for resale and are victims of consumer fraud by virtue of Intel's unfair and deceptive acts or practices.

39. Intel directly and foreseeably caused and continues to cause Plaintiff's and the other class members' injuries. Plaintiff and the other class members paid a particular price for defective microprocessors. Plaintiff and the other class members were damaged on account of receiving microprocessors worth less than as represented.

40. Intel's conduct is fraudulent, wanton, and malicious.

41. Pursuant to §1782(d) of the CLRA, attached hereto as Exhibit B is the affidavit showing that this action has been commenced in the proper forum.

## COUNT II (NATIONAL CLASS)

### Violation of California's Unfair Competition Law – Bus. & Prof. Code §§17200, *et seq.*

42. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

43. The Unfair Competition Law, Business & Professions Code §§17200, *et seq.* ("UCL"), and similar laws in other states, prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

44. In the course of conducting business, Intel violated the UCL's prohibition of unlawful, unfair, or fraudulent business acts and practices by misrepresenting the quality of Intel microprocessors, omitting material facts concerning the Meltdown defect, and selling uniformly defective microprocessors.

45. Intel also violated the UCL's prohibition of unlawful and unfair business acts or practices by actively concealing the existence of the defect, misrepresenting the extent and scope of the defect, and refusing to repair or remedy the defect.

46. Intel failed to adequately disclose the defect when the defect was a material fact of the sale and failed to adequately institute remedial measures to remedy the defect.

47. Intel's fraudulent and unfair conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous. The gravity of the harm caused by Intel's actions outweighs the benefits.

48. In the course of conducting business, Intel committed unlawful business practices by, among other things, making the representations and omissions of material facts, as set forth more fully herein, and violating Civil Code §§1572, 1573, 1709, 1711, 1770(a)(5), (7), (9), (16), Business & Professions Code §§17200, *et seq.*, and 17500, *et seq.*, and the common law. Plaintiff reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

49. As stated herein, Plaintiff alleges violations of consumer protection laws, unfair competition, and fraudulent conduct resulting in harm to consumers. Plaintiff asserts the violation of the public policy against false and misleading advertising, unfair competition, and deceptive conduct towards consumers. The conduct constitutes a violation of the unfair prong of the UCL. There is no societal benefit from designing and manufacturing defective products, concealing these defects, and refusing to cure the defects when under a duty to remedy them. While Plaintiff and the other class members were harmed, Intel was unjustly enriched by its misrepresentations and omissions. As a result, Intel's conduct is "unfair," as it offended an established public policy. Further, Intel engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

50. Further, as set forth in this Complaint, Plaintiff alleges violations of consumer protection, unfair competition, and truth in advertising laws in California and other states, resulting in harm to consumers. Intel's acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition, and deceptive conduct towards consumers. This conduct constitutes violations of the unfair prong of Business & Professions Code §§17200, *et seq.* There were reasonably available alternatives to further Intel's legitimate business interests that Intel should have taken, but did not.

51. Business & Professions Code §§17200, *et seq.*, also prohibits any "fraudulent business act or practice." In the course of conducting business, Intel committed "fraudulent business act[s] or practices" by among other things, prominently making the representations (which also constitute advertising within the meaning of §17200) and omissions of material facts regarding the safety, characteristics, and production quality of its microprocessors.

52. Intel's actions, claims, omissions, and misleading statements, as more fully set forth above, were also false, misleading and likely to deceive the consuming public within the meaning of Business & Professions Code §§17200, *et seq.*

53. Plaintiff has in fact been deceived as a result of his reliance on Intel's material representations and omissions, which are described above. Plaintiff has suffered an injury in fact and lost money as a result of purchasing the deceptively advertised microprocessors, including by paying more than he should have for a falsely advertised product that contains the uniform defect negatively impacting its value.

54. Intel knew, or should have known, that its material representations and omissions would be likely to deceive the consuming public and result in consumers purchasing microprocessors impacted by the Meltdown defect and, indeed, intended to deceive consumers.

55. As a result of the deception, Intel has been able to reap unjust revenue and profit.

56. Unless restrained and enjoined, Intel will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

57. Plaintiff, on behalf of himself, all others similarly situated, and the general public, seeks restitution from Intel of all money obtained from Plaintiff and the other members of the class collected as a result of unfair competition, an injunction prohibiting Intel from continuing such practices, corrective advertising, and all other relief this court deems appropriate, consistent with Business & Professions Code §17203.

///

///

## COUNT III (ILLINOIS SUBCLASS)

**Iillinois Consumer Fraud and Deceptive Business Practices Act –
815 Ill. Comp. Stat. 505/2**

58. Plaintiff repeats and realleges all of the foregoing paragraphs as if fully set forth herein.

59. The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2, prohibits unfair methods of competition and unfair or deceptive acts or practices.

60. Intel's sale of defective microprocessors was unfair and deceptive. Intel continued to sell defective microprocessors after it learned of the defect without notifying the public that the microprocessors were defective.

61. Intel omitted the material fact of the microprocessor defect from Plaintiff and the other members of the Illinois subclass.

62. Intel's omission was material and deceptive. Reasonable consumers consider the performance of their microprocessor to be material.

63. Intel's conduct was also unfair. Intel's conduct was immoral, unethical, oppressive, and unscrupulous, and substantially injured Plaintiff and the other members of the Illinois subclass.

64. Plaintiff and the other members of the Illinois Subclass suffered damage as a result of Intel's deceptive and unfair conduct. The performance of their computers has been significantly reduced. Plaintiff and the other members of the Illinois subclass have been deprived of the benefit of their bargain and are left with substandard microprocessors that fail to function as intended.

## REQUESTS FOR RELIEF

**WHEREFORE,** Plaintiff, individually and on behalf of all other class members, respectfully requests that the Court enter an Order:

A. Certifying the classes under Fed. R. Civ. P. 23 as requested herein, appointing Plaintiff as Representative Plaintiff, and Plaintiff's counsel as Class Counsel;

B. Awarding Plaintiff and the other class members actual, consequential, and incidental damages to be determined by the trier of fact;

C. Awarding Plaintiff punitive damages;

D. Awarding Plaintiff and the other class members injunctive relief;

E. Awarding Plaintiff and the other class members pre- and post-judgment interest on all amounts awarded;

F. Awarding attorneys' fees, litigation expenses, and costs of suit incurred through the trial and any appeals of this case; and

G. Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this Class Action Complaint so triable.

Respectfully submitted,

Dated: January 8, 2018

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)

By:      s/ Timothy G. Blood
             TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com

BARNOW AND ASSOCIATES, P.C.
BEN BARNOW
ERICH P. SCHORK
JEFFREY D. BLAKE
ANTHONY L. PARKHILL
One N. LaSalle Street, Ste. 4600
Chicago, IL 60602
Tel: 312/621-2000
312/641-5504 (fax)
b.barnow@barnowlaw.com
e.schork@barnowlaw.com
j.blake@barnowlaw.com
aparkhill@barnowlaw.com

*Attorneys for Plaintiff*